[No. 7,888.—Department Two.]
June 28, 1882.

## ELIZA A. COOK, Administratrix Etc. *v.* CLAY STREET HILL RAILROAD COMPANY.

Action for Death Caused by Negligence—Sufficiency of Evidence—Verdict.—In an action by the widow and administratrix of a deceased person for damages for the death of the intestate alleged to have been caused by the negligence of the defendant, the jury rendered a verdict for the plaintiff.

*Held :* The question of evidence was submitted to the jury under instructions as favorable to the defendant as it could ask, and under instructions it did ask for, and as there was evidence from which negligence might be inferred the verdict should not be disturbed.

Id.—Admissibility of Evidence.—1. The plaintiff was allowed to testify that it was the usual custom of deceased, during his married life, to be at home after business hours, and that they had lived a happy married life; that for eight years prior to his death she had been an invalid and unable to leave the house, and that during that time he had been very kind and attentive, and that she was dependent upon him. 2. The daughter of deceased was allowed to testify that he was kind as a father; that the social and domestic relations as to the family on his part were happy, and that he was kind and loving to plaintiff. 3. The plaintiff was permitted to testify that after Mr. Cook had been taken to his home she discovered pieces of flesh.

*Held :* The first and second points above stated are fully covered by § 377 C. C. P. " Such damages may be given as under all the circumstances of the case may be just "—and by the decision of this Court in *Beeson* v.

*Green Mountain G. & S. Co.*, 57 Cal. 20. As to the third point there is nothing in the case to show that any damages were asked or given for suffering borne by the deceased; the action was for negligently causing his death; and the evidence given was of circumstances attendant upon the injury.

ID.—DAMAGES.—The damages found (eight thousand dollars) were not excessive.

APPEAL from a judgment for the plaintiff, and from an order denying a new trial, in the Superior Court of the City and County of San Francisco. HAYNE, J.

*Estee & Boalt*, for Appellant.

On the point that all of the above testimony was improperly admitted, we cite the following authorities: *Little Rock and Ft. Smith Ry. Co.* v. *Barker*, 33 Ark. 350; *Steel* v. *Kurtz*, 28 Ohio St. 191; *Chicago and B. & Q. R. R. Co.* v. *Harwood*, 80 Ill. 88; *Potter* v. *Chicago and N. W. R. R. Co.*, 21 Wis. 373; *Blake* v. *Midland R. R. Co.*, 10 Eng. L. & Eq. 437; *Field on Damages, Sec.* 627; *Kansas P. Railway Co.* v. *Cutter*, 19 Kan. 83; *Green* v. *H. R. Ry. Co.*, 31 Barb. 260; *Donaldson* v. *M. & M. Ry. Co.*, 18 Ia. 290; *Penn.R.R. Co.* v. *Butler*, 57 Penn. 337; *Brady* v. *Chicago*, 4 Biss. 448; *Chicago & N. W. R. R. Co.* v. *Bayfield*, 37 Mich. 205; *I. C. R. R.* v. *Baches*, 55 Ill. 379; *Penn. R. R.* v. *Butler*, 57 Penn. 335; *Sedgwick on Meas. of Dam.* 540; *Regan* v. *Chicago, etc., R. R. Co.*, 51 Wis. 599; *Mansfield Coal Co.* v. *McEnery*, 91 Penn. 185; *Penn. Co.* v. *Roy*, 102 U. S. S. C. Rep. 459.

The Court, against the objections of the defendant, allowed the plaintiff to testify as to what was discovered by her, when Mr. Cook was brought home after the accident, viz: portions of flesh, etc. The only object of this testimony would be to show the suffering of the deceased. (*Whitford* v. *P. R. R. Co.*, 23 N. Y. 465; *Blake* v. *Midland R. R. Co.*, 10 Eng. L. and Eq. 443; *Safford* v. *Drew*, 3 Duer, 633; *Kennedy* v. *Standard Sugar Refinery*, 125 Mass. 90; *Southern Cotton Press Co.* v. *Bradley*, 52 Tex. 587; *Lehman* v. *City of Brooklyn*, 29 Barb. 237; *Chicago & R. Is. R. R. Co.* v. *Morris*, 26 Ill. 402; *Shear & Red. on Negligence, Sec. 610; Penn. R. R. Co.* v. *Zebe*, 33 Penn. St. 330; *Penn. R. R. Co.* v. *Goodman*, 62 id. 338; *Penn. R. R. Co.* v. *Butler,* 57 id. 338.)

*H. C. Newhall, Eugene N. Deuprey,* and *W. W. Cope,* for Respondent.

"A carrier of persons for reward must use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill." (C. C., Section 2100.) The doctrine so provided by statute is supported by language, far more forcible in the decisions of the several States and in the text book: "Common carriers of passengers are bound to use more than ordinary care—*i. e.,* more than such care as is used by very cautious persons." (*Edwards* v. *Lord,* 49 Me. 279; *Maverick* v. *E. Ave. R. R. Company,* 36 N. Y. 378; *Taylor* v. *G. T. Ry. Company,* 48 N. H. 304; *Philadelphia & R. R. R. Co.* v. *Darby,* 14 How. (U. S.) 486; Thompson's Carrier of Passengers, §§ 200, 201; *Sullivan* v. *P. & R. R. R. Co.,* 30 Penn. 234; *Farish* v. *Reigle,* 11 Grat. (Va.) 697; *New Orleans etc. R. R. Co.* v. *Allbritton,* 38 Miss. 242; *Stokes* v. *Saltonstall,* 13 Pet. 181; *Fero* v. *Buffalo etc. R. R. Co.,* 22 N. Y. 214; *Johnson* v. *W. & St. P. Co.* 11 Min. 296; *Cohen* v. *Dry Dock etc. R. R. Co.,* 69 N. Y. 170; *Sales* v. *W. S. Co.,* 4 Iowa, 547; Redfield on Law of Railways (5th ed.), vol. 2, p. 241, and notes commencing with the words "wilful slayer," etc.; Thompson on Carriers, 239; 1 Starkie on Ev. 423; Story on Bailments (8th ed.), 580; Thompson's Carriers of Passengers, 200, 214; Redfield on Law of Railways (5th ed.), vol. 2, p. 235; 50 Ind. 84, 85; Pierce on Am. R. Law, 494, 495; 4 G. Greene (Iowa), 555; *Jamison* v. *Santa Clara R. R. Co.,* 55 Cal. 593; *Boyce* v. *Cal. Stage Co.,* 25 id. 460; *Yeomans* v. *C. C. N. Co.* 44 id. 72; *Myers* v. *City and County of San Francisco,* 42 Cal. 215; *Fickin* v. *Jones,* 28 id. 627.)

In cases of street railways, the same degree of extraordinary caution and care is to be exercised. (Schouler on Bailments, 638; *Maverick* v. *Eighth Av. R. R. Co.,* 36 N. Y. 378.)

Of the errors in law, designated in the assignment of errors the questions involved, relate solely to the social relations of the deceased, confined to the limit of the family, and to the habits, industrious and economical, of the deceased.

They are all and every within the scope and authority of the doctrine of the case of *Beeson* v. *Green Mountain G. and S. Co.,* 57 Cal. 20.)

Myrick, J.:

The defendant is the owner of a street railroad in San Francisco, running on Clay street, between Kearny street and Van Ness avenue. The cars are propelled by means of an endless cable, and to each car is attached a dummy, carrying the gripping apparatus. Seats are arranged on the sides and at the ends of the dummy for the use of passengers. The railroad has two tracks, the northern track being for cars going up the hill from Kearny street and the southern track being for descending cars. On the fourteenth of June, 1880, John H. Cook, plaintiff's husband, seated himself as a passenger at the lower end of the seat on the south side of the dummy. A two-horse express wagon, driven by one Williams, had crossed the northern track, and was standing on the southern track, at a point about one hundred and fifty feet from Kearny street, at the time the dummy in question started; the wagon was so cramped that the horses were headed towards the north track, their heads projecting so far over it that the approaching dummy would have struck them, and the rear end of the wagon pointed obliquely down the hill, also towards the northern track.

As the dummy came up to the wagon, two passengers, seated on the southerly seat, jumped over the back of the seat; as the rear end of the dummy came up, a hind wheel of the wagon collided with the dummy, and Cook received injuries from which he died. This action was brought to recover damages, and the jury returned a verdict for plaintiff for eight thousand dollars. Judgment was rendered accordingly, and from that judgment and from the order denying motion for new trial, defendant appealed.

First—The defendant presents the point that the evidence was insufficient to justify the verdict, and claims that the evidence shows that the collision was the result of carelessness or negligence on the part of the driver of the express wagon, and that the driver of the dummy used due diligence in endeavoring to avoid a collision. There is some conflict in the evidence as to whether the collision was immediately caused by the backing down of the wagon against the dummy, and the defendant insists that as the forward part

of the dummy passed the wagon without collision, the wagon *must have been* backing. There is also a conflict in the evidence as to the distance which would have intervened between the wagon and dummy, if the wagon had remained stationary; one witness says, three or four inches; another, one and a half or two feet, another, two feet, another, three or four feet. The answer of the defendant contains the allegation that "the said horses attached to said wagon were unmanageable and balky, and that the brake on said express-wagon was out of repair and unsuited and unfit for the objects and purposes of a brake." The dummy driver testified regarding the horses attached to the express wagon: "My impression was that it was a balky team; I thought it was a balky team; I did not know; there is no dependence to be placed in balky horses; they are liable to scare at anything; I got the impression that it was a balky team as I was drawing up near the wagon, some little time after I started; my mind was still more confirmed that it was a balky team when I got thirty feet than before; I ordered him to turn away his horses; when he turned away his horses I thought I could go by, and I then started at full speed; when the horses commenced to back I stopped; I tried to stop because I knew that if I kept on going, and the wagon kept on coming back, that there would be something terrible happen, some hard crushing of the wagon and car if they would run together." Let it be conceded that the dummy and car could possibly have passed the wagon if the latter had remained stationary, yet, as the wagon and horses were diagonally across the southern track, in the form of two sides of an angle, it being necessary to move the horses in order to pass them, the dummy-driver having observed the position in ample time to stop, as but a narrow space would at best intervene between the wagon and the dummy, as the dummy-driver believed the horses to be balky and perhaps uncontrollable, and as, from the relative positions, the backing of the horses must have forced the wagon against the dummy, it was for the jury to determine whether a proper degree of prudence and caution would not have required the dummy-driver to stop until the horses and wagon could be moved to a safe distance, rather than to go on, as he says, at full speed, and take the risk

of the backing down of the horses. There was a safe course open to the dummy-driver; there was, also, a course open full of risk and peril to the persons and lives of passengers. He took the latter course, in the face of instructions he says he received from the Company, "not to take any desperate chances, or to take any great risks, so far as endangering property or persons was concerned." The question of negligence was submitted to the jury under instructions as favorable to the defendant as it could ask, and under instructions it did ask for, and as there was evidence from which it might infer negligence, we will not disturb the verdict.

Second—The defendant alleges errors of law occurring at the trial and excepted to:

1. The plaintiff was allowed to testify that it was the usual custom of deceased, during his married life, to be at home after business hours, and that they had lived a happy married life; that for eight years prior to his death she had been an invalid and unable to leave the house, and that during that time he had been very kind and attentive, and that she was dependent upon him.

2. The daughter of deceased was allowed to testify that he was kind as a father; that the social and domestic relations as to the family on his part were happy; and that he was kind and loving to plaintiff.

3. The plaintiff was permitted to testify that after Mr. Cook had been taken to his home she discovered pieces of flesh.

The first and second points above stated are fully covered by Section 377, C. C. P.—"Such damages may be given as under all the circumstances of the case may be just"—and by the decision of this Court in *Beeson* v. *Green Mountain G. & S. Co.*, 57 Cal. 20. We are asked to review that case, and change or modify the views therein expressed. We decline to accede to that request; on the contrary, we here follow them. The plaintiff sued as heir-at-law and as administratrix; in both respects testimony of plaintiff's relations with deceased was admissible; in the latter respect, testimony as to the relations of the father and daughter was admissible. The defendant claims that the admission of the testimony re-

ferred to in the third point, above, was error, in that it would be to show the suffering of the deceased, and damages therefor could not here be recovered. There is nothing in the case to show that any damages were asked or given for suffering borne by the deceased; the action was for negligently causing his death, and the evidence given was of circumstances attendant upon the injury.

Third—The defendant claims that the damages were excessive. The testimony shows that the deceased was fifty-nine years old, the surviving family consisting of his widow and daughter, twenty-three years of age, that he was a game and poultry dealer, and made a good comfortable living for himself and family. The verdict was for eight thousand dollars. That sum of money at the statutory rate of interest, would produce five hundred and sixty dollars a year—some fortysix dollars a month. The plaintiff being an invalid, and having been for years dependent upon her husband, we cannot, as law, say that the amount given is more than, "under all the circumstances of the case," is just.

Judgment and order affirmed.

We are asked to give damages on affirmance. We cannot say that the appeal was taken for delay; we therefore decline to add damages as a penalty.

THORNTON and SHARPSTEIN, JJ., concurred.