JAMES R. BOWLES, as Administrator, etc., of AMELIA BOOS, Deceased, Respondent, v. THE ROME, WATERTOWN AND OGDENSBURG RAILROAD COMPANY, Appellant.

*Action by an administrator to recover damages for the negligent killing of his daughter — when a verdict in his favor will not be set aside on the ground that the damages are excessive.*

Upon the trial of this action, brought by the plaintiff, as the administrator of his deceased daughter, to recover damages sustained by reason of her death, which was alleged to have been caused by the defendant's negligence, it appeared that she died intestate, leaving no husband or descendant, and leaving her father, the plaintiff, her sole heir-at-law and next of kin. Evidence was given showing that the father was sixty-six years of age; that he was in infirm health; that his wife was fifty-eight years of age, and that both were without property; that, since 1866, the decedent had contributed from $300 to $400 per annum towards the support of her parents; that, at the time of her death, she was thirty-six years of age, in good health, and in receipt of a salary of from eight dollars to nine dollars per week, which she had received for five or six years prior to her death. *Held*, that a verdict of $4,000 would not be set aside as excessive.

APPEAL from a judgment in favor of the plaintiff, entered in Oswego county upon the verdict of a jury, and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

*Edmund B. Wynn,* for the appellant.

*A. Walker Otis,* for the respondent.

FOLLETT, J. :

Appeal from a judgment entered on a verdict for $4,000 damages, and from an order denying a motion for a new trial, made on the minutes.

July 27, 1883, at 9.43 P. M., defendant's passenger train collided with one of defendant's freight cars and instantly killed Amelia Boos, a passenger. She died intestate, leaving no husband or descendant, but leaving the plaintiff, her father, her sole heir-at-law and next of kin, to whom letters of administration were duly issued. Upon this appeal the defendant contends (1) that there was not sufficient evidence that the defendant negligently caused decedent's death to justify the submission of the case to the jury, and that the court erroneously refused a nonsuit; (2) that the verdict is for excessive damages, and the trial court erroneously refused to set it aside as excessive; (3) that the plaintiff was permitted to introduce, over defendant's objections and exceptions, incompetent testimony on the question of damages.

The immediate cause of the accident was an empty box car standing, as is testified, with its wheels on the road-bed and each side of one of the rails of the main track. The case was tried by both sides on the theory that the car was driven by the wind from the side track to the main track. The plaintiff claims that defendant was negligent (1) in not securing the car so that the wind could not have moved it ; (2) in using hand-bakes, operated by only three brakemen, instead of air-brakes upon this train, consisting of two locomotives, one baggage car, one day coach and nine sleepers, carrying on this trip 248 passengers. The railroad has but one track, and at this place runs in an easterly and westerly direction. On the north side of the main track there is a side track about 1,300 feet long, connected at both ends with the main track by switches. The day before the

accident the box car was left by defendant on the side track. The passenger train was running easterly, at the rate of about twenty-six miles per hour, when it collided with the box car just east of the east switch. The evidence shows that this side track is "nearly level," but it does not show in which direction, if in either, there is an ascending grade. It is agreed that before the accident a storm of wind and rain prevailed at and in the vicinity of the place of the accident, and it is claimed by the defendant that the wind blew with sufficient violence to drive this car from the side track to the place where it was struck, even though the brakes were tightly and securely set. The plaintiff conceded that the storm came from the west, but insisted that the wind was not sufficiently violent to move this car if the brakes had been properly set. Upon this issue evidence was given on both sides as to the force and effect of the wind. In behalf of the plaintiff, it was testified that a field of growing corn alongside of the railroad at the place of the accident, was not affected by the wind, and an expert was called, who testified that to move the car with brakes set would require a pressure of forty-two pounds to the square foot, which would require the wind to move at the rate of eighty-one miles per hour.

In behalf of the defendant, several witnesses testified that the wind blew with great force, prostrating some trees of considerable size in the vicinity of the accident. Two witnesses testified that when the box car was left upon the side track they saw the brakeman in charge of the car set the brakes, but they do not testify how tightly, or whether they were secured by applying the ratchet to the wheel. The brakeman, whose duty it was to set these brakes, had left defendant's employ, and could not be produced at the trial. How tightly or securely the brakes were set does not appear. No other precautions were taken to prevent the box car from being moved. It does not appear that the car had been particularly examined by any one after it was left on the side track. It is conceded that hand brakes only were used on this train, and but three brakemen were employed. The defendant does not complain of the mode in which the question of negligence was submitted to the jury, but insists that the question ought not to have been left to the jury at all. Under all of the evidence in this case, and considering the circumstances surrounding the transaction, the evidence

was sufficient to carry the case to the jury. It was so decided in *Webster's case* (40 Hun, 161), which arose out of this accident, and we do not see that the facts of this case are distinguishable from that.

The plaintiff is sixty-six years of age, in infirm health, and his wife is fifty-eight years of age, and both are without property. The evidence is, that since 1866, the decedent contributed from $300 to $400 per annum towards the support of her parents. The decedent, at the time of her death, was thirty-six years of age, in good health and in the receipt of a salary of from eight to nine dollars per week. She had been in receipt of this salary for five or six years prior to her death. The trial court did not err in refusing to set aside the verdict as excessive. In *Bierbauer* v. *New York Central and Hudson River Railroad Company* (15 Hun, 559; affirmed, 77 N. Y., 588) a verdict of $5,000 was sustained for the death of an unmarried man, twenty-one years of age, and earning about twenty-five dollars per month. In that case the recovery went to the father, who was sixty-five years of age, who had a wife and children, as has the plaintiff in the case at bar. Upon this question the case cited and the one at bar are quite similar. In *Carpenter* v. *Buffalo, New York and Philadelphia Railroad Company* (38 Hun, 116) a refusal to set aside, as excessive, a verdict for $4,000 recovered by a father for the death of an unmarried son, was sustained. In that case, as in the case at bar, the decedent was under no legal obligation (except under the poor law) to support the father.

The health and pecuniary circumstances of the father were relevant facts. (*Lockwood* v. *N. Y., L. E. and W. R. R. Co.*, 98 N. Y., 523; *Houghkirk* v. *D. and H. C. Co.*, 92 id., 219; *Cook* v. *Clay Street Hill R. R. Co.*, 60 Cal., 604.) The daughter's uniform and long continued voluntary partial care of her father and mother by contributions of money and property, and by personal services, were relevant facts. (*Quinn* v. *Power*, 29 Hun, 183; *Carpenter* v. *Buffalo, N. Y. & P. R. R. Co.*, 38 id., 116; *Cook* v. *Clay Street Hill R. R. Co.*, 60 Cal. 604.)

Whether the father's loss of the society of the daughter was relevant upon the question of damages need not be considered. The remarks: "She was very much attached to her father;" "he enjoyed her company and society to a very great extent;"

" she was her father's favorite child," were stricken out. The court charged: " But you are not to take into account any feeling of sadness for the loss of his daughter. That is entirely out of the case." " When you come to the' question of the care and attendance which this daughter would have been likely to have given, as she had been accustomed to give — if you come to that question — you will have to fix the money value of that kind of service. . No matter how faithfully and tenderly she may have nursed him, you are simply to take into account the money value ; it is the money value which you are to consider in this case. Just the amount of money which it is supposed was lost to this man by reason of the death of his daughter. And it is the money value of the care and attention which, from the evidence, as it appears here, you have a right to estimate the money value of that care which would have been received during the remaining years of his life." Under this direction the jury could not have been misled by any of the evidence in respect to damages, of which the defendant complains.

The judgment is affirmed, with costs.

HARDIN, P. J., and MARTIN, J., concurred.

Judgment and order affirmed with costs.