MIZE, Admx., Respondent, *v.* ROCKY MOUNTAIN BELL TELEPHONE CO. et al., Appellants.

(No. 2,657.)

(Submitted March 13, 1909.   Decided April 3, 1909.)

[100 Pac. 971.]

*Electricity—Death by Negligence—Duty of Defendants—Proximate Cause—Elements of Damages—Verdict—Municipal Ordinances—Pleadings—Different Acts of Negligence—Proof.*

Electricity—Death by Negligence—Duty of Defendant—Care Required.

1.   Plaintiff's intestate was killed while working in a field, some ten miles from a city, by coming in contact with a fence wire which had been charged with a dangerous current of electricity by means of a high tension wire of an electric power company, which, in falling upon a telephone wire in the streets of the city, charged the latter, and it in turn transferred the current through a guy wire to the fence wire. Defendant telephone and electric power companies contended that they did not owe any duty to deceased. *Held,* that they were bound to use reasonable care to prevent the crossing of their respective wires and the consequent diversion of the dangerous current into means of transmission with which persons rightfully about their business might come in contact.

Negligence—Proximate Cause.

2.   The "proximate cause" of an injury is that which, in a natural and continuous sequence, unbroken by any new, independent cause, produces the injury, and without which the injury would not have occurred.

Electricity—Personal Injuries—Proximate Cause.

3.   To break the chain of sequence between defendants' negligence in permitting their wires to come in contact, and the death of plaintiff's intestate, so as to relieve them from its consequences, it was necessary for the accident to have been such a one as could not reasonably have been anticipated by them; and to hold them liable it was not necessary to show that they ought to have foreseen the particular injury which did result, but if it appeared that they ought to have anticipated that

*some* accident was likely to happen as the reasonable and natural consequence of their negligence, it was sufficient.

Same.

4. Defendant companies were chargeable with knowledge that an electric current will go wherever there is a metallic substance to conduct it, and therefore should have foreseen that serious injury might reasonably be expected to result to one coming in contact with a telephone wire charged with a highly dangerous current of electricity, or with one leading from it.

Same—Railroad Rights of Way—Trespassers.

5. Though a railroad company may not alienate its right of way or any part of it so as to interfere with the full performance of the functions of the railway, it may grant a license for the construction of an irrigating ditch over a portion of it; therefore deceased, who was killed, while cleaning out a ditch constructed under such a grant, through contact with a fence wire charged with electricity as detailed in paragraph 1 above, was not a trespasser to whom defendants owed no duty.

Same—Measure and Elements of Damages—Instructions.

6. Under section 6486, Revised Codes, providing that "such damages may be given as under all the circumstances of the case may be just," evidence relative to the marital relations existing between plaintiff and her intestate up to the time of his death was permissible; and the court did not err in charging the jury that in estimating the damages plaintiff was entitled to, they might take into consideration, as an element of such damages, the pecuniary loss of the widow on account of being deprived of the comfort, protection, society and companionship of her husband.

Same—Pleadings—Causes of Action—Form of Verdict.

7. Where the complaint in an action to recover damages for the negligent killing of a person stated but a single cause of action, though drawn in four separate counts specifying separately the acts of negligence relied upon, a verdict finding the issues in favor of plaintiff "on each and all of the four causes of action set forth in the complaint" was in effect a general verdict and sufficient; while the pleading was defective and the verdict unusual in form, defendants' rights could not have been prejudicially affected by either.

Same—Municipal Ordinances—Scope.

8. A municipal ordinance which, though a grant of a franchise to defendant telephone company, provided generally that, whenever it was necessary for any electric light or power wire to approach or cross telephone or telegraph wires, the same should not approach or cross such wires at a distance of less than four feet, was applicable alike to defendant electric power company, and its violation was *prima facie* negligence.

Same—Different Acts of Negligence—Proof.

9. Plaintiff was not required to prove every act of negligence charged in her complaint; having proved to the satisfaction of the jury facts sufficient to show that the negligence of defendants directly caused the death of her intestate, she was entitled to recover.

*Appeal from District Court, Gallatin County; Henry L. Myers, Judge, presiding.*

Action by Georgie Mize, as administratrix of John Mize, deceased, against the Rocky Mountain Bell Telephone Company

and the Gallatin Light, Power and Railway Company. From a judgment for plaintiff and from an order denying them a new trial, defendants appeal. Affirmed.

*Messrs. H. G. & S. H. McIntire,* for Appellant, Rocky Mountain Bell Telephone Company.

The Rocky Mountain Bell Telephone Company was not in the control of, nor was it managing or supervising, the wire in question here; there was therefore no duty in and about the same owing by it to respondent's intestate. An action for injury to person or property arising from negligence can be maintained only where it is made to appear that some duty existed, on the part of the person causing the injury, towards the person injured, which duty was left unfulfilled. (Thompson on Negligence, Supp., sec. 3, and cases cited in note 9; *Newark Elec. L. & P. Co.* v. *Garden,* 78 Fed. 75, 23 C. C. A. 649, 37 L. R. A. 725; *Driscoll* v. *Clark,* 32 Mont. 188, 80 Pac. 1, 373; *Shaw* v. *New Year Gold Mines Co.,* 31 Mont. 146, 77 Pac. 515; *Nord* v. *Boston & M. C. C. & B. M. Co.,* 30 Mont. 59, 75 Pac. 681.) That appellant did not owe any duty to deceased, see *Fowles* v. *Briggs,* 116 Mich. 428, 72 Am. St. Rep. 537, 74 N. W. 1046, 40 L. R. A. 530; *Griffin* v. *Jackson L. & P. Co.,* 128 Mich. 655, 92 Am. St. Rep. 496, 87 N. W. 888, 55 L. R. A. 320; *Missouri K. & T. R. Co.* v. *Merrill,* 65 Kan. 443, 93 Am. St. Rep. 287, 70 Pac. 358; *Cumberland T. & T. Co.* v. *Martin,* 116 Ky. 554, 105 Am. St. Rep. 229, 76 S. W. 394, 77 S. W. 718, 63 L. R. A. 469.

In an action for injuries caused by negligence, it must be shown by the plaintiff that the alleged negligence was the proximate cause of the injury. If the facts are disputed, then it is for the jury to determine, but if not, then the court cannot shift its duty upon the jury to declare the result of such facts. (*McGehee* v. *Norfolk & S. Ry. Co.,* 147 N. C. 142, 60 S. E. 917; *Cole* v. *German S. & L. Soc.,* 124 Fed. 113, 59 C. C. A. 593, 63 L. R. A. 423; *Snyder* v. *Colorado Springs etc. R. Co.,* 36 Colo. 288, 118 Am. St. Rep. 110, 85 Pac. 686, 8 L. R. A., n. s., 781; *Missouri Pac. Ry. Co.* v. *Columbia,* 65 Kan. 390, 69 Pac.

338, 58 L. R. A. 399; *Stephenson* v. *Corder,* 71 Kan. 475, 114 Am. St. Rep. 500, 80 Pac. 938, 69 L. R. A. 246.) "One is answerable in damages for the consequences of his faults only so far as they are natural and proximate, may therefore have been foreseen by ordinary forecast, and not for those arising from a conjunction of his own faults with circumstances of an extraordinary nature." (*Allegheny* v. *Zimmerman,* 95 Pa. 295, 40 Am. Rep. 649.)   That this principle is applicable to the case at bar is apparent from the decision in *Consolidated E. L. & P. Co.* v. *Koepp,* 64 Kan. 735, 68 Pac. 608, a case very similar to the present one.   See, also, the following cases where this subject is elaborately considered: *Claypool* v. *Wigmore,* 34 Ind. App. 35, 71 N. E. 509; *Ahern* v. *Oregon Tel. & T. Co.,* 24 Or. 276, 33 Pac. 403, 35 Pac. 549, 22 L. R. A. 635; *Hoag* v. *Lake Shore etc. R. Co.,* 85 Pa. 293, 27 Am. Rep. 653; *Snyder* v. *Colorado etc. Co.,* 36 Colo. 288, 118 Am. St. Rep. 110, 8 L. R. A., n. s., 781, 783; *Kreigh* v. *Westinghouse etc. Co.,* 152 Fed. 120, 11 L. R. A., n. s., 686; *State* v. *Boston etc. R. Co.,* 171 Mass. 536, 51 N. E. 1, 41 L. R. A. 794; *Harton* v. *Forest City Tel. Co.,* 146 N. C. 429, 59 S. E. 1022, 14 L. R. A., n. s., 956.

The existence of the guy wire, its defective installation, so that it came in contact not only with the private telephone wire, but with the barbed-wire fence, could not and should not have been foreseen or expected by defendants in the usual, natural or probable course of events.   Indeed, the contrary should have been anticipated by them, upon the principle that it is to be presumed that a duty owing by one to another will be and is performed.   (*Cole* v. *German S. & L. Soc., Consolidated E. L. & P. Co.* v. *Koepp, supra.*)   The guy wire was an independent and efficient event or agency intervening between any possible cause, set in motion by either of the defendants, and the injury.   It was *causa causans,* the *sine qua non,* and, under the authorities, it must be held to have been the proximate cause of the injury complained of, and under the pleadings and testimony it was the duty of the lower court to so declare.   (See *Cole* v. *German S. & L. Soc., supra.*)

Deceased was a trespasser on the right of way of the Northern Pacific Railway Company. A trespasser, or licensee, must take the risks of the premises as he finds them. The only duty owing to such a person is to refrain from wantonly or willfully injuring him. This rule further applies to premises not belonging to the defendant, but adjacent or contiguous thereto. (*Graves* v. *Washington Power Co.*, 44 Wash. 675, 87 Pac. 956, 11 L. R. A., n. s., 452; *Cumberland T. & T. Co.* v. *Martin, supra; Herzog* v. *Hemphill*, 7 Cal. App. 116, 93 Pac. 899; *Egan* v. *M. C. Ry. Co.*, 24 Mont. 574, 63 Pac. 831; *Northern Pacific R. Co.* v. *Townsend*, 190 U. S. 267, 23 Sup. Ct. 671, 47 L. Ed. 1044.)

The measure of damages in a case of this character is the amount which the deceased would probably have earned during his life, taking into consideration his age, ability and disposition to work, and his habits of living, and expenditures. (*Soyer* v. *Great Falls Water Co.*, 15 Mont. 5, 37 Pac. 838; *Pennsylvania Tel. Co.* v. *Varnau* (Pa.), 15 Atl. 624; *Schaub* v. *Hannibal etc. R. R. Co.*, 106 Mo. 74, 16 S. W. 924; *Castello* v. *Landwehr*, 28 Wis. 522.) And in *Bourke* v. *Butte E. & P. Co.*, 33 Mont. 267, 289, 83 Pac. 470, and *Olsen* v. *Montana Ore Pur. Co.*, 35 Mont. 400, 89 Pac. 734, is emphasized the rule that damages must be confined to probable earnings, etc., of the deceased. (See, also, *Colusa Parrot etc. Co.* v. *Monahan*, 162 Fed. 276-282.) In permitting the plaintiff to testify over defendants' objection, as to the relations of affection, faithfulness and kindness which had existed between her and her deceased husband, the court committed error.

*Mr. J. L. Templeman*, and *Messrs. Hartman & Hartman*, for Appellant, Gallatin Light, Power & Railway Company.

*Messrs. Walrath & Patten*, for Respondent.

The duty which devolved upon the Bell company, by reason of its assumption of control of the private wire, was the duty which devolves upon any corporation or person who, as owner, contractor, or mere volunteer or meddler, assumes the management or control of something which, if not properly managed

or controlled, is likely to cause injury to others to exercise care, and it became responsible to any person who might be injured through its negligent failure to discharge that duty. (*Van Winkle* v. *American Steam Boiler Ins. Co.,* 52 N. J. L. 240. 19 Atl. 472; *Piltsfield Cottonwear Mfg. Co.* v. *Pittsfield Shoe Co.,* 71 N. H. 522, 53 Atl. 807, 60 L. R. A. 116; *Styles* v. *F. R. Long & Co.,* 70 N. J. L. 301, 57 Atl. 448; *Nagel* v. *Missouri R. R. Co.,* 75 Mo. 653, 42 Am. Rep. 418; *Fuchs* v. *City of St. Louis,* 133 Mo. 168, 31 S. W. 115, 34 S. W. 508, 34 L. R. A. 118; *Boston & Me. R. R. Co.* v. *Sargent,* 72 N. H. 455, 57 Atl. 688.) The concurrent duty of both appellants is established by a long line of cases, arising under similar circumstances. (*McKay* v. *Southern Bell Tel. etc. Co.,* 111 Ala. 337, 56 Am. St. Rep. 59, 19 South. 695, 31 L. R. A. 589; 15 Cyc. 474; *Hebert* v. *Lake Charles etc. Co.,* 111 La. 522, 100 Am. St. Rep. 505, 35 South. 731, 64 L. R. A. 101; *Drown* v. *New England Tel. etc. Co.,* 80 Vt. 1, 66 Atl. 801; *City Electric etc. Co.* v. *Conery,* 61 Ark. 381, 54 Am. St. Rep. 262, 33 S. W. 426, 31 L. R. A. 570; *United Electric etc. Co.* v. *Shelton,* 89 Tenn. 423, 24 Am. St. Rep. 614, 14 S. W. 863; *Guinn* v. *Delaware etc. Co.,* 72 N. J. L. 276, 111 Am. St. Rep. 668, 62 Atl. 412, 3 L. R. A., n. s., 988; *East Tennessee etc. Co.* v. *Carmine,* 29 Ky. Law Rep. 479, 93 S. W. 903; *Cumberland etc. Co.* v. *Ware's Admx.,* 24 Ky. Law Rep. 2519, 74 S. W. 289; *Simmons* v. *Shreveport Elec. Co.,* 116 La. 1033, 41 South. 248; *Citizens' Tel. Co.* v. *Thomas* (Tex. Civ. App.), 99 S. W. 879; *Harrison* v. *Kansas City etc. Co.,* 195 Mo. 606, 93 S. W. 951, 7 L. R. A., n. s., 293.)

If one sets in motion a cause, which any reasonable person must foresee is likely to result in injury to others, and an injury does in fact result, which, after its occurrence, and in the light of what actually occurred, appears to have been a natural and probable consequence of such cause, it is sufficient. It is by no means necessary that the wrongdoer have the precise knowledge of conditions to know, or the power of imagination to forecast, every possible consequence which will flow from his act of negligence, because, if this were so, ignorance and stupidity would be a cloak of immunity. If there be an unbroken chain of

sequence from the original negligence to the injury, it will remain the proximate cause, regardless of the number of successive instruments through or upon which it may have operated. (*Milwaukee etc. R. Co.* v. *Kellogg,* 94 U. S. 469, 24 L. Ed. 256; *Fishburn* v. *Burlington etc. Co.,* 127 Iowa, 483, 103 N. W. 481; *Slattery* v. *Lawrence Ice Co.,* 190 Mass. 79, 76 N. E. 459; *Davis* v. *Mercer Lumber Co.,* 164 Ind. 413, 73 N. E. 899; *Watters* v. *City of Waterloo,* 126 Iowa, 199, 101 N. W. 871; *Drum* v. *Miller,* 135 N. C. 204, 102 Am. St. Rep. 528, 47 S. E. 421, 65 L. R. A. 890; *White Sewing Machine Co.* v. *Richter,* 2 Ind. App. 331, 28 N. E. 446.) Other interesting applications of this principle to cases where the facts were unusual will be found in the following cases: *Burk* v. *Creamery Package Mfg. Co.,* 126 Iowa, 730. 106 Am. St. Rep. 377, 102 N. W. 793; *Atchison T. & S. F. Ry. Co.* v. *Parry,* 67 Kan. 515, 73 Pac. 105; *Meyer* v. *Milwaukee Elec. Ry. & L. Co.,* 116 Wis. 336, 93 N. W. 6; *City of Henderson* v. *O'Haloran,* 114 Ky. 186, 102 Am. St. Rep. 279, 70 S. W. 662, 59 L. R. A. 718; *City of Dixon* v. *Scott,* 181 Ill. 116, 54 N. E. 897; *Glanz* v. *Chicago etc. Ry. Co.,* 119 Iowa, 611, 93 N. W. 575; *Galveston etc. Ry. Co.* v. *Currie* (Tex. Civ. App.), 91 S. W. 1100; *Indianapolis etc. Ry. Co.* v. *Barnes,* 35 Ind. App. 485, 74 N. E. 583.

The following cases present facts analogous to those in the case at bar, and illustrate our contention that it was the negligence of the appellants in permitting the crossing of the wires in Bozeman, and not the existence of the guy wire, that was the proximate and efficient cause of the death of Mize; and that the existence of the guy wire was a mere condition through and upon which the negligence of the appellants operated, in unbroken sequence, in causing the injury: *Nelson* v. *Narragansett Electric Lighting Co.,* 26 R. I. 258, 106 Am. St. Rep. 711, 58 Atl. 802, 67 L. R. A. 116; *McKenna* v. *Citizens' Natural Gas Co.,* 198 Pa. 31, 47 Atl. 990; *Snyder* v. *Philadelphia Co.,* 54 W. Va. 149, 102 Am. St. Rep. 941, 46 S. E. 366, 63 L. R. A. 896; *Harton* v. *Forest City Telegraph Co.,* 141 N. C. 455, 54 S. E. 299; *Burk* v. *Creamery Package Mfg. Co.,* 126 Iowa, 730, 106 Am. St. Rep. 377, 102 N. W. 793; *Turner* v. *Page,* 186 Mass.

600, 72 N. E. 329; *Leeds* v. *New York Tel. Co.*, 178 N. Y. 118, 70 N. E. 219.

It is by no means necessary that the proximate cause be the one nearest to the event, or that it be the sole cause. (*Shippers' Compress & Warehouse Co.* v. *Davidson*, 35 Tex. Civ. App. 558, 80 S. W. 1032; *Galveston etc. Ry. Co.* v. *Vollrath*, 40 Tex. Civ. App. 46, 89 S. W. 279; see, also, *Bowden* v. *Derby*, 99 Me. 208, 58 Atl. 993; *Strange* v. *Bodcaw Lumber Co.*, 79 Ark. 490, 116 Am. St. Rep. 92, 96 S. W. 152; *Gulf etc. Ry. Co.* v. *Josey* (Tex. Civ. App.), 95 S. W. 688; *Neal* v. *Rendall*, 100 Me. 574, 62 Atl. 706; *Houston etc. Ry. Co.* v. *Oram* (Tex. Civ. App.), 92 S. W. 1031; *Yess* v. *Chicago Brass Co.*, 124 Wis. 406, 102 N. W. 932.)

The duty to insulate electric wires to prevent injury to those who may come in contact with them is well settled, and it is evident that the reason of the rule would extend it to the prevention of contacts with other wires which might in turn cause injury. (15 Cyc. 473; *Hebert* v. *Lake Charles Ice Co.*, 111 La. 522, 100 Am. St. Rep. 505, 35 South. 731, 64 L. R. A. 101; *Cumberland T. & T. Co.* v. *Ware's Admx.*, 115 Ky. 581, 74 S. W. 289; 1 Joyce on Electricity, sec. 517a; *Younie* v. *Blackfoot L. & W. Co.*, 15 Idaho, 56, 96 Pac. 193.) The fact that the insulation of dangerous electric wires is very expensive is no excuse for failure to keep such insulation perfect. (*McLaughlin* v. *Louisville etc. Co.*, 100 Ky. 173, 37 S. W. 851, 34 L. R. A. 812; *Hebert* v. *Lake Charles etc. Co.*, *supra*.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On May 20, 1907, and for some time prior thereto, the defendants Rocky Mountain Bell Telephone Company, hereinafter referred to as the "Bell company," maintained a telephone exchange in Bozeman, and owned and maintained pole lines in various streets and alleys and had wires suspended from such poles, as a part of its telephone system. At all such times the Gallatin Light, Power and Railway Company, hereinafter referred to as the "Light Company," owned and operated an electric light and

power plant, and, as a part of its plant, it owned and maintained certain pole lines in the streets and alleys of Bozeman and the wires attached to such poles. At all such times the Bozeman Milling Company and the Benepe-Stanton Grain Company, hereinafter referred to as the "private companies," owned and operated a private telephone line from Bozeman to Belgrade, a distance of eleven or twelve miles. On May 20, 1907, John Mize was killed at a point near the private telephone line and nine or ten miles from Bozeman. His wife, as administratrix of his estate, brought this action against the Bell company and the light company to recover damages. It is alleged in the complaint that for a period of about two years prior to and including May 20, 1907, the Bell company had assumed and exercised full charge, supervision, and control of the private telephone wire from Third Avenue North, to Tracy Avenue North, a distance equal to three city blocks, in the city of Bozeman. It appears from the complaint that the portion of the private telephone line just mentioned was strung upon poles belonging to the Bell company, which poles were set along an alley cutting both Third Avenue and Tracy Avenue at right angles. It appears also that the light company had wires strung to poles along Grand Avenue North—an avenue running parallel with and between Third and Tracy Avenues and cut by the alley at right angles also. On May 20, 1907, the private telephone wire, which crossed above the light wires at right angles, became detached from the Bell company's poles, near the intersection of the alley and Grand Avenue, fell upon a wire belonging to the light company, and received a charge of about two thousand volts of electricity from the light wire. About nine or ten miles from Bozeman, the private telephone line, following the course of the public road, turned from north to west. For the purpose of securing the corner pole, a guy wire was attached to the pole near the top and between the two private wires, and then attached to a fence post on the outer line of the right of way of the Northern Pacific Railway Company. It appears that the guy wire touched one of the private telephone wires and also came in contact with one strand of fence wire.

This fence ran south a short distance where it connected with another wire fence, called the "inner right of way fence," and at a point on this inner right of way fence, about three-fourths of a mile from the point of intersection of the two fences, John Mize was at work in an irrigating ditch belonging to his employer, Young, on the late afternoon of May 20, 1907, when, coming in contact with a wire on the fence, he was killed. It is alleged that the current of electricity received by the private telephone line wire from the light wire was conducted along the telephone wire to the guy wire, thence over the guy wire to the outer right of way fence wire, thence over that wire to the wire of the inner right of way fence, and along the wire of the inner right of way fence to the point where Mize was at work, and that when he came in contact with this wire he received the charge of electricity and was killed thereby. It is charged that the defendants were negligent in the following particulars: 1 (a) The Bell company in permitting this private telephone wire to become detached from its poles. (b) The light company in permitting the insulation on its wires to become defective. (2) In failing to provide a guard or device at the point where the wires crossed, to prevent the wires from coming in contact. (3) In violating a city ordinance of the city of Bozeman. (4) In failing to break the contact between the two wires for a period of six hours or more. From a judgment rendered and entered in favor of the plaintiff, and from an order denying them a new trial, the defendants have appealed.

A review of the authorities cited would not serve any useful purpose. There is not any substantial conflict in the authorities upon the general rules of law applicable in negligence cases. and we might select cases from the briefs of appellants or respondent in support of the principles which we announce, with one or two possible exceptions. The difficulty which the courts generally experience is, not in ascertaining the rules of law, but in applying them to the facts of particular cases.

1. *Legal duty:* It is urged by counsel for appellants that they did not owe any legal duty to Mize. This contention is aptly

answered in *City Electric St. Ry. Co.* v. *Conery*, 61 Ark. 381, 54 Am. St. Rep. 262, 33 S. W. 426, 31 L. R. A. 570, a case in many respects similar to the one before us. The street railway company maintained a power line through certain streets in Little Rock. White owned a private telephone line running at right angles to one of the railway company's lines. The private telephone wire came in contact with the power line and received a supercharge of electricity. Conery came in contact with the private telephone wire and was injured. He recovered against the street railway company and White, the owner of the private telephone wire. On appeal by the street railway company the question now before us was raised. The court said: "The next question is: Upon what duty of the appellant to the appellee can this action be based? The answer to it is: Upon the duty enjoined by the rule which requires everyone to so use his property as not to injure another. The applicability of this rule may be shown by many illustrations. One is where an owner of a vicious animal accustomed to do hurt, knowing his habits, negligently allows him to escape. He is responsible for the mischief the animal does, because it was the duty of the owner to keep him secure. * * * This rule applies with equal force to electric companies. They are bound to use reasonable care in the construction and maintenance of their poles, cross-arms, and wires, and other apparatus, along streets and other highways. They are required to do so for the protection of persons and property." (21 Am. & Eng. Ency. of Law, 2d ed., 476.)

2. *Proximate cause:* One of the principal contentions made in this case is that, assuming the negligence of the defendants, such negligence was not the proximate cause of Mize's death, for the reason that the guy wire intervened and broke the causal connection between the negligence of the defendants and the death of Mize. The *proximate cause* of an injury is that which in a natural and continuous sequence, unbroken by any new, independent cause, produces the injury, and without which the injury would not have occurred. (*Goodlander M. Co.* v. *Standard Oil Co.*, 63 Fed. 400, 11 C. C. A. 253, 27 L. R. A.

583; 1 Shearman & Redfield on Negligence, sec. 26; 6 Current Law, 757; *Missouri Pac. Ry. Co.* v. *Columbia,* 65 Kan. 390, 69 Pac. 338, 58 L. R. A. 399; *Claypool* v. *Wigmore,* 34 Ind. App. 35, 71 N. E. 509.)

What intervening cause will break the chain of sequence and so far insulate the first wrongdoer's negligence from the injury as to relieve such wrongdoer? The courts have experienced some difficulty in answering this inquiry, and they are not altogether in harmony upon the subject; but to this extent they may be said to agree: That to relieve the original wrongdoer the result must be such that he could not reasonably have anticipated it. In 29 Cyc. 499, the rule is stated as follows: "The mere circumstance that there have intervened between the wrongful cause and the injurious consequence acts produced by the volition of animals or persons does not necessarily make the result so remote that no action can be maintained. The test is not to be found in the number of intervening events or agencies, but in their character and in the natural connection between the wrong done and the injurious consequence, and if such result is attributable to the original negligence as a result which might reasonably have been foreseen as probable, the liability continues." What ought to be foreseen or anticipated as the probable consequence of the wrongdoer's negligence? In the first instance, it is not necessary to show that he ought to have anticipated the particular injury which did result; but it is sufficient to show that he ought to have anticipated that some injury was likely to result as the reasonable and natural consequence of his negligence. This is the meaning of section 6068, Revised Codes, and expresses the rule announced by this court in *Reino* v. *Montana M. L. Dev. Co., ante,* p. 291, 99 Pac. 853.

The evidence is conclusive upon one point: That with the current of electricity necessary to operate this private telephone line, and telephone lines generally, the wires are entirely harmless. The evidence also shows that telephone wires are frequently exposed where persons—even children—may come in contact with them. The defendants are chargeable with knowl-

edge of these facts, and therefore chargeable with knowledge that this private telephone line itself was, or wires leading from it were, likely to be so placed that persons might rightfully come in contact with one or more of them. In our view of this case, the manner in which the guy wire was attached is not of any consequence. If, as shown by the evidence, the current of electricity necessary to operate this private telephone line was harmless, then the owners of the private line might have attached their wires directly to the fence posts of the inner right of way fence (if they had permission to do so). We say this to emphasize our view that these defendants were chargeable with the consequence which might reasonably be expected to follow the charging of this private wire with a dangerous current of electricity, in view of the fact that telephone wires are likely to be exposed where persons, rightfully about their business, may come in contact with them. It will not do for defendants to say that they could only expect that this dangerous current would be carried over the private line, eighteen or twenty feet above the ground, to Belgrade. They were chargeable with knowledge that the current would go wherever there was a metallic substance to conduct it; and while it is not necessary in this case to adopt the broad rule announced by Shearman & Redfield on Negligence, section 29, to the effect "that a person guilty of negligence should be held responsible for all the consequences which a prudent and experienced man, fully acquainted with all the circumstances which in fact existed (whether they could have been ascertained by reasonable diligence or not) would, at the time of the negligent act, have thought reasonably possible to follow, if they had occurred to his mind," we do go to the extent of saying that these defendants ought reasonably to have anticipated that, by their negligence in permitting this private wire to become charged with a dangerous current of electricity, serious injury would result to some one if in fact the private wire, or a wire leading from it, was exposed as it might be exposed.

3. *Was Mize a trespasser?* The evidence shows that Mize met death while at work in an irrigating ditch. The portion of the

ditch in which he was at work at the time of his death is over and upon a portion of the right of way of the Northern Pacific. Railway Company. Concerning this ditch, Young, the employer of Mize, testified: "I remember the occasion of his death. He was working for me at that time. * * * My irrigating ditch is on the south side of the road and on the north side of the road also. Crossing the road it runs through a flume, and this ditch is made out of rocks, and he was cleaning this ditch when he came in contact with this fence. John Mize's work would call him to the place where he was killed. * * * I found him lying under the fence dead. That was the right of way fence. He was lying with his body toward the flume, but he was as well as over the fence before that, kind of on his back in the irrigating ditch. * * . * It is my ditch, and heads not in a slough, but in a regular running stream there near the railroad track." This evidence was not contradicted in any way and is sufficient to make out a *prima facie* case that Mize was not a trespasser; but counsel for appellants insist that the railway company cannot alienate any portion of its right of way, and therefore Mize must be presumed to have been a trespasser, and *Northern Pacific Ry. Co.* v. *Townsend,* 190 U. S. 267, 23 Sup. Ct. 671, 47 L. Ed. 1044, is cited. But that case is only authority for the proposition that title to a portion of such right of way cannot be acquired by adverse possession. It may be conceded that the Northern Pacific Railway Company cannot alienate its right of way, or any part of it, so as to interfere with the full performance of the functions of the railway; but that an additional servitude may be imposed upon a portion of such right of way, or that the railway company may grant a license for such use of its right of way as will not interfere with the proper operation of its railway system, we entertain no doubt.

4. *Measure of damages:* Over the objection of defendants, the court permitted evidence to be introduced tending to show the marital relations of plaintiff and her husband up to the time of Mize's death, and in instruction 34 the court advised the jury that, if they found for the plaintiff, then, in estimating

the damages, they might take into consideration the pecuniary loss, if any, of the widow on account of her being deprived of the comfort, protection, society and companionship of her husband. In each of these instances we think the trial court was correct. Section 6486, Revised Codes, provides that "such damages may be given as under all the circumstances of the case may be just." The authorities are not harmonious upon this question, but in California, where they have a statute similar to our section 6486 above, the rule announced has been in force for many years. (*Beeson* v. *Green Mt. G. Min. Co.*, 57 Cal. 20; *Cook* v. *Clay St. H. R. Co.*, 60 Cal. 604; *Cleary* v. *City R. Co.*, 76 Cal. 240, 18 Pac. 269; *Munro* v. *Pacific C. etc. Co.*, 84 Cal. 515, 18 Am. St. Rep. 248, 24 Pac. 303; *Morgan* v. *Southern Pac. Co.*, 95 Cal. 510, 29 Am. St. Rep. 143, 30 Pac. 603, 17 L. R. A. 71; *Lange* v. *Schoettler*, 115 Cal. 388, 47 Pac. 139; *Harrison* v. *Sutter St. Ry. Co.*, 116 Cal. 156, 47 Pac. 1023; *Wales* v. *Pacific Elec. M. Co.*, 130 Cal. 521, 62 Pac. 932, 1120; *Green* v. *Southern Pac. Ry. Co.*, 122 Cal. 563, 55 Pac. 577; *Green* v. *Southern Cal. Ry. Co.* (Cal.), 67 Pac. 4; *Dyas* v. *Southern Pac. Co.*, 140 Cal. 296, 73 Pac. 975; *Evarts* v. *Santa Barbara C. R. Co.*, 3 Cal. App. 712, 86 Pac. 830.) While not directly deciding the question, this court, in *Hollingsworth* v. *Davis-Daly Estates Copper Co., ante*, p. 143, 99 Pac. 142, intimated that the rule we have announced would be followed.

5. *Form of verdict:* The verdict in this case reads as follows: "We, the jury in the above-entitled cause, find the issues herein in favor of the plaintiff, Georgie Mize, and against the defendants, Rocky Mountain Bell Telephone Company and Gallatin Light, Power and Railway Company, on each and all of the four causes of action set forth in the complaint herein, and fix and assess her damages at the sum of six thousand dollars ($6,000.00)." The complaint is drawn in four separate counts or causes of action, but in fact it states but a single cause of action and specifies separately the acts of negligence. While under our Code practice there may arise cases in which it is proper to set forth a single cause of action in separate counts, this is clearly not such a case. The verdict, too, is unusual in

form; but these defects, we think, are not such as could have prejudicially affected the rights of either defendant. The verdict is in effect a general verdict and is sufficient. (5 Ency. of Pl. & Pr. 339; *Lancaster* v. *Connecticut Mut. L. Ins. Co.*, 92 Mo. 460, 1 Am. St. Rep. 739, 5 S. W. 23.)

6. *Instructions:* Exceptions were taken by the appellants to the action of the trial court in giving certain instructions and in refusing to give instructions asked by defendants; but, after a careful review of the instructions given and refused, we are unable to find any error prejudicially affecting the rights of either appellant. The charge, as a whole, seems to us to present the law of the case fairly.

7. *The evidence:* Without rehearsing the evidence, it is sufficient to say that in our opinion it is ample to sustain the verdict. It tends to show such supervision and control of the private wire by the Bell company, at the point where the two wires came in contact, as renders that company liable for its negligence in permitting the wire to become detached and to fall upon the light wire. It is also sufficient to show the negligence of the light company in failing to keep its wire properly insulated. It is sufficient to go to the jury upon the question of the negligence of both defendants in failing to break the contact between the wires for many hours after they came in contact and before Mize's death.

There was a palpable violation of the city ordinance, and neither of these defendants can escape liability by saying that the ordinance applies only to the other. While the ordinance is a grant of a franchise to the Bell company, it is more than that. Section 5 provides: "Whenever it is necessary for any electric light or power wire to approach or cross the line of any fire alarm, police telegraph, telegraph or telephone wires, the same shall not approach to or cross either of said wires at a distance of less than four feet either above or below said fire alarm police telegraph, telegraph or telephone wire." This provision is a general municipal law applicable to both of these defendants (*Hayes* v. *Michigan Cent. Ry. Co.*, 111 U. S. 228, 4 Sup. Ct. 369, 28 L. Ed. 410; *Heidt* v. *Southern Telephone Co.*, 122

Ga. 474, 50 S. E. 361; *Clements* v. *Louisiana Electric Light Co.*, 44 La. Ann. 692, 32 Am. St. Rep. 348, 11 South. 51, 16 L. R. A. 43), and its violation was *prima facie* negligence (*Commonwealth Electric Co.* v. *Rose*, 214 Ill. 545, 73 N. E. 780; 1 Thompson on Negligence, sec. 1196; 1 Shearman & Redfield on Negligence, sec. 13).

It is clear from this evidence that neither of these defendants took any precaution to prevent the wires, where they crossed, from coming in contact, other than to fasten the wires to poles. In 1 Joyce on Electricity, section 490a, the author says: ''Where electric wires are maintained by different companies in the streets, obligations are by law imposed upon each, not only with respect to the others, but also to individuals and to the public in general to prevent a contact of the wires, which may result in injury to property or person. The question as to the duty of such companies arises most frequently where an injury has resulted from the contact of a telegraph or telephone wire with an electric light or trolley wire by which the dangerous current of the latter is conveyed into the former. From a consideration of the several cases in which the liability of a company under such circumstances is considered, the rule may be deduced that, where companies of such a character occupy the streets with their poles and wires, each company is under the obligation to exercise reasonable or due care—that is, a degree of care which is reasonable in view of the circumstances and commensurate to the dangers and risks involved— to prevent its wires from coming into contact with the wires of another company, and that a company which has been negligent in the performance of its duty in this respect will, in the absence of contributory negligence on the part of the persons injured, be liable for the injury resulting from such contact.''

The evidence was amply sufficient to show negligence on the part of the Bell company in failing to use well-known simple devices to prevent the private wire from coming in contact with the high tension wire of the light company. The evidence upon this point, so far as it relates to the light company, is very slight; but, after all, it was a question for the jury, under all

the circumstances of the case, to say whether the light company had used reasonable care to prevent the contact of the two wires. In discussing this subject in a case arising from an injury received from crossed wires, the supreme court of Wisconsin, in *Block* v. *Milwaukee St. Ry. Co.,* 89 Wis. 371, 46 Am. St. Rep. 849, 61 N. W. 1101, 27 L. R. A. 365, said: "The negligence which is alleged and claimed against the defendant is its omission to place guard wires over its trolley wires in such a way as to prevent the telephone wires, in case of their falling from any cause, from falling upon and coming in contact with the trolley wires. * * * No doubt it is the duty of the defendant to use such customary and approved appliances as are known and used in the business of operating electric railways. So far as reasonable knowledge, in the present state of the science and the practical use of electricity as a motive power for street railways, and reasonable foresight, can go, it is bound to guard the public against the perils attendant upon this use of electricity; but it is liable only for what is known as reasonable care. The present state of the science, and the present practical knowledge of the most practical and effectual means and methods of guarding against such perils as are incident to its use, are a most important element in the question of what is reasonable care. In the present condition of the science and of the practical knowledge on this subject, it cannot be said, as matter of law, what method of guarding the wires shall be required, nor whether any guards shall be required, for it is not known to the law that any method now known will prove effective; but it is a question for the jury, under all the facts in the cause, to determine whether the method actually used was negligent."

The case of *Hamilton* v. *Bordentown Electric Light Co. et al.,* 68 N. J. L. 85, 52 Atl. 290, presents facts very similar to those in the case before us. For brevity the companies are referred to as the "light company," the "telegraph companies," and the "telephone company." It appears that the low tension wire of the telegraph companies crossed above the high tension wire

of the light company, and some distance away crossed under the low tension wire of the telephone company. The telegraph wire was permitted to come in contact with the wire of the light company and received a supercharge of electricity. The telephone wire came in contact with the telegraph wire and likewise received a dangerous current. Plaintiff's intestate, attempting to remove the telephone wire, was killed. The light company and the telegraph companies were held liable, and, speaking of their duty, the court said: "It is assumed that the defendants were each maintaining wires in the public highways in the exercise of a franchise. Hence each was bound to take reasonable care not to injure other users of the street. It was the duty of the electric light company to use reasonable care that other uninsulated telegraph wires that crossed it should not be allowed to come in contact with its wire, which was insulated, and which carried a powerful electric current, and remain for so long a time in contact therewith as to wear away the insulation and divert the powerful current to the telegraph wire, to the probable injury of persons who should come in contact with the telegraph wire, or in contact with other wires which might be brought in touch with the charged telegraph wire. It was the duty of the three companies maintaining the telegraph wire to use reasonable care to prevent their wire from coming in contact with the highly charged electric light wire and remain in contact therewith in such a way and for so long a time as to wear off the insulation and divert the current to its own wire, to the danger of those who should touch it or touch another wire with which it might come in contact. (*New York etc. Telephone Co.* v. *Bennett,* 62 N. J. L. 742, 42 Atl. 759.)" (See, also, *Western Union Tel. Co.* v. *State,* 82 Md. 293, 51 Am. St. Rep. 464, 33 Atl. 763, 31 L. R. A. 572.) But in the view we take of this complaint, it was not necessary for plaintiff to prove every act of negligence charged. She did prove to the satisfaction of the jury facts sufficient to show that the negligence of these defendants directly produced the death of Mize.

The case was fairly submitted, and the correct result appears to have been reached.   The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.